IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

OMAR BROWN,

      Plaintiff,

v.

FEDERAL EXPRESS
CORPORATION,

      Defendant.

No. 3:16-cv-01456-M (BT)

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court in this *pro se* civil action brought under Title VII, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981 is Defendant Federal Express Corporation's Motion for Summary Judgment (ECF No. 76). For the reasons stated, Federal Express Corporation's Motion for Summary Judgment should be GRANTED.

## Background

Plaintiff Omar Brown, born in the Republic of Panama, worked for Defendant Federal Express Corporation ("FedEx") from 1993 to 2014, during which time he held various positions. Pl.'s 2d Am. Compl. 1-2 (ECF No. 40). From approximately 2003 until his resignation, Brown worked as a ramp transport driver and reported to Anthony Poston. Def.'s Br. 2 (ECF No. 77). As his manager, Poston frequently counseled Brown regarding punctuality, work attendance, and proper paperwork submission. Def.'s App. 79-98 (ECF No. 78).

1

In 2012 and 2013, Brown lodged formal complaints against Poston. Specifically, in 2012, Brown emailed FedEx Human Resources Advisor Edward Harvey to complain that Poston harassed and bullied him and that Poston's tone and approach were demeaning, intimidating, and disrespectful. *Id.* 110-11. Although Brown did not state in his email that Poston's alleged conduct was because of his race or national origin, Harvey encouraged Brown to use FedEx's IEEO process—an internal procedure for reporting allegations of employment discrimination and harassment—to submit a formal complaint about Poston. *Id.* 110-11. Brown did so, and in his IEEO complaint, Brown averred Poston was harassing and retaliating against him. *Id.* 99-109. However, Brown did not allege Poston discriminated against him because of his race, ethnicity, national origin, or ancestry. Brown complained of harassment again in 2013 by using FedEx's Guaranteed Fair Treatment Procedure ("GFTP"), a process by which an employee can challenge disciplinary actions, to contest corrective letters he received from Poston in February and July 2013. *Id.* 278-86. Brown did not raise allegations of race or national origin discrimination in this GFTP complaint. *Id.*

The crux of this lawsuit is Brown's complaint that he was not selected to interview for a ramp manager position for which he applied in 2014. *See* Def.'s Br. 6-7. FedEx's avers that its hiring process for management positions involves multiple steps. *Id.* 4, Def.'s App. 187-88. After the position is placed on the internal job posting site, applicants submit packets consisting of a job-change application, a resume, a resume summary, a position-specific knowledge

2

questionnaire, and a related-knowledge questionnaire. Def.'s App. 188-90. A human resources advisor is the only individual who performs the tasks of removing application packets that do not meet minimum requirements for the position and sending the remaining packets to the hiring manager for review. *Id.* 270-71.

The hiring manager then assigns each application a grid score based exclusively on information in the application packet. *Id.* 187-192, 199. Position-specific knowledge points are awarded if an applicant has worked specific FedEx positions relevant to the sought position or demonstrated experience while working in other FedEx positions. *Id.* 189. Other related knowledge points are awarded for knowledge and experience from any source. *Id.* The hiring manager is the only individual who assigns a grid score. *Id.* 194. The combined points form the grid score, and interviews for the position are granted based on the grid score alone. *Id.* 199.

When Brown applied for the ramp manager position in April 2014, his application passed the initial eligibility screening, but he was denied an interview because of his grid score. *Id.* 232-33. The hiring manager, Phebia Williams, assigned Brown a grid score of six; the three employees who were interviewed scored a seven or above. *Id.* 234-236. Ultimately, the ramp manager position went to a black FedEx employee, Rochelle Gardner. Def.'s Reply 4 (ECF No. 83). On August 18, 2014, Brown filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination

based on his race, national origin, and retaliation. Def.'s App. 287. Brown stated specifically "I believe I have been discriminated against because of my race, Black, my nation [sic] origin, Hispanic, and in retaliation for engaging in protected activity . . . ." *Id.* Brown resigned from FedEx on November 24, 2014.

In May 2016, Brown, through counsel, filed suit against FedEx. His first attorney was allowed to withdraw in September 2016. Order (ECF No. 29). Substitute counsel filed two amended complaints, but withdrew from representing Brown in October 2017. Order (ECF No. 53). The live complaint, filed on March 20, 2017, asserts claims under Title VII, 42 U.S.C. §2000e-2, and 42 U.S.C. § 1981 for (1) color and race discrimination; (2) national origin discrimination, (3) sex discrimination, and (4) retaliation. Pl.'s 2d Am. Compl. 7-11. The Court dismissed Brown's sex discrimination claim for failure to exhaust administrative remedies. Order (ECF No. 45). On June 28, 2018, FedEx filed the pending summary judgment motion, arguing that Brown cannot (1) establish a prima facie case of discrimination or retaliation or (2) prove that FedEx's stated reasons for the actions taken were pretext for prohibited discrimination. Brown, proceeding *pro se*, filed a response, and FedEx filed a reply. The issues have been fully briefed, and the summary judgment motion is ripe for adjudication.

## Motion to Strike

As a preliminary matter, the Court considers Brown's "Motion to Strike Errata" (ECF No. 85). Three days after it filed a reply brief, FedEx filed a Notice

of Errata—and a revised brief—to correct the following "typographical errors" in

the original reply brief:

1. Changing the word "this" to "the" in the first sentence of
   Section I;

2. Changing the word "reason" to "reasons" in the last
   sentence of Section I;

3. Changing the word "now" in the third full sentence on page
   2 to "not;"

4. Adding a citation to Appx. 240 to the end of the first
   paragraph on page 3;

5. Removing the word "that" from the second sentence in the
   last paragraph on page 3; and

6. Removing a citation to Appx. 285 in the first paragraph of
   Section II.

Notice 1. In response to FedEx's Notice, Brown filed his Motion to Strike Errata.

However as the full title of Brown's Motion reveals,[1] Brown does not so much

object to FedEx's changes as he seeks to file a surreply.

   Neither the local rules of this Court nor the Federal Rules of Civil

Procedure allow a party to file a surreply as a matter of right. Indeed, surreplies

are "highly disfavored" and permitted only in "extraordinary circumstances,"

such as when necessary to respond to new issues, theories, or arguments raised

---

[1] The full title of Brown's Motion is "Motion to Strike Errata Change to the
Deposition Testimony of Phebia Williams and Note if the Errata Were Allowed It
Would Change Answers from 'Yes to No' and Amount to Material Changes to the
Fact Finding Testimony. Plaintiff Also Submits a Reply Response in Support of
His Objections to Federal Express Motion for Summary Judgment in View of
these Improper Errata Changes."

for the first time in a reply brief. *Luna v. Valdez*, 2017 WL 4222695, at *6 (N.D. Tex. Sept. 21, 2017); *see also Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 WL 251318 at *18 (N.D. Tex. Feb. 3, 2003) ("A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage."). Brown has not shown the existence of any extraordinary circumstances that necessitate the filing of a surreply. Further, to the extent Brown's Motion objects to any typographical corrections made to FedEx's reply, the Court finds that the changes are immaterial to the determination of FedEx's summary judgment motion. Accordingly, Brown's Motion to Strike Errata is DENIED.

## Legal Standards

### Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings,

discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the non-movant, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. U.S. Post Office*, 752 F.

Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

Discrimination and Retaliation

The summary judgment analysis is the same for racial discrimination claims under § 1981 and Title VII. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Such claims may be proved through direct evidence, statistical proof, or the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

If the plaintiff establishes a prima facie case, an "inference of intentional discrimination" arises. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of production then shifts to the defendant to articulate a

legitimate, non-discriminatory reason for the challenged employment action.

*Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)

(citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)).

Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the

pretext alternative, the plaintiff must introduce "some evidence, whether

circumstantial or direct, that permits the jury to believe that the reason was false

and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*,

138 F.3d 563, 566 (5th Cir. 1998). Under the mixed-motive alternative, a plaintiff

need only present sufficient evidence for a reasonable jury to conclude that race,

color, sex, religion, or national origin was a motivating factor for the employment

practice at issue. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

"The burden-shifting structure applicable to Title VII disparate treatment

cases, as set forth in *McConnell Douglas* . . . is also applicable to Title VII

unlawful retaliation cases." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.

1996). Therefore, once the plaintiff establishes a prima facie case, the burden of

production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. *Id.*

## Analysis

### Discrimination

To establish a prima facie case of discrimination, Brown must show that (1) he was not selected to interview for the ramp manager position, (2) he was qualified for the position, (3) he fell within a protected class at the time of the decision not to select him, and (4) the FedEx either gave the position to someone outside of his protected class or otherwise failed to select Brown because of his race or national origin. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013). FedEx does not contest that Brown was a member of a protected class as a black or Latino-American employee,[2] met the minimum qualification of

---

[2] Although Brown has made inconsistent statements regarding his race and national origin, *see* Def.'s App. 11 (Brown claiming in his deposition to be white) and Pl.'s Resp. 9, 29 (Brown asserting in his summary judgment response that he is a "latino hispanic [sic] male" and a "Black Latino"), for purposes of its summary judgment motion, FedEx stipulates that Brown is a black, Latino-American. Def.'s Reply 4. To the extent Brown asserts he is a member of any other protected class, Brown cannot defeat FedEx's motion by contradicting his prior sworn statement in his EEOC charge that his race is "Black" and his national origin is "Hispanic"—at least not without explaining the contradiction or attempting to resolve the disparity. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

the position, applied for the position, and was rejected. Def.'s Br. 10. FedEx only challenges that Brown cannot prove FedEx promoted someone outside of his protected class or otherwise failed to promote him because of his race or national origin.

Here, the uncontroverted evidence establishes that Gardner, the employee hired for the ramp manager position, is black—the same race as Brown. Def.'s App. 219. There is no evidence in the record regarding Gardner's national origin, and Brown admitted at his deposition that he did not know her national origin. Def.'s App. 60. Brown further fails to identify any evidence that FedEx failed to promote Brown because of his race or national origin. Thus, Brown has failed to establish a prima facie case of discrimination based on FedEx's failure to select him for the ramp manager position. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir. 2000); *Freeman v. Jackson*, 2007 WL 2219440, at *4 (N.D. Tex. Aug. 1, 2007) ("[P]laintiff has not adduced a prima facie case because she cannot meet the fourth element, namely, that the . . . position was filled by someone outside her protected class . . . . [T]he applicant selected for the . . . position []is black, thus, the selectee is of the same race as plaintiff").

To the extent Brown argues FedEx discriminated against him by treating him less favorably than similarly situated employees outside his protected class, Brown similarly cannot prove a prima facie case. *See McCoy*, 492 F.3d at 556 (holding that a plaintiff can establish a prima facie case of discrimination by showing that he (1) belongs to a protected group; (2) was qualified for his

11

position; (3) suffered an adverse employment action; and (4) was replaced by someone outside his protected class or was treated less favorably than similarly situated employees outside the protected class). Brown "fails to identify a proper comparator—an individual of a different race and color than him 'under nearly identical circumstances' who was treated more favorably." *Harris v. Copart, Inc.*, 2018 WL 3598775, at *6 (N.D. Tex. June 27, 2018), *rec. adopted*, 2018 WL 3596746 (N.D. Tex. July 26, 2018) (citing *Lee*, 574 F.3d at 260). Moreover, Brown admitted in his deposition that Poston treated other employees similarly. Def.'s App. 62, 64. Brown also testified that he does not know whether Poston disciplined other employees for similar conduct. Def.'s App. 30, 62, 64, 127-28, 131-32. Thus, Brown has failed to establish a prima facie case of discrimination based on being treated less favorably than similarly situated employees outside his protected class.

<u>Retaliation</u>

To establish a *prima facie* case of unlawful retaliation, Brown must prove (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long*, 88 F.3d at 304. FedEx argues that Brown has not engaged in a protected activity and is unable to prove a causal link between his complaints and an adverse employment action. Def.'s Br. 13 & 16.

*Protected Activity*

An employee has engaged in an activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *Long*, 88 F.3d at 304. "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

This is an opposition clause case. The participation clause is not at issue when an employee files an EEOC charge after the adverse employment action. *Byers*, 209 F.3d at 428; *see also Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 310 (5th Cir. 2017) (per curiam) ("The 'participation clause' is inapplicable here because [Plaintiff] did not file her EEOC charge until June 22, 2015, more than one month after Lone Star terminated her employment."). Brown filed his charge on August 18, 2014, several months after FedEx denied his application for the ramp manager position in April 2014. Therefore, Brown's retaliation claim involves the opposition clause only.

"To satisfy this opposition requirement, [Brown] need only show that he had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers*, 209 F.3d at 428). However, "[t]he Fifth Circuit has made plain that 'a vague complaint, without any reference to an unlawful employment

practice under Title VII, does not constitute a protected activity.'" *Obondi v. UT Sw. Med. Ctr.*, 2017 WL 2729965, at \*13 (N.D. Tex. June 23, 2017) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015)). Generally invoking Title VII buzzwords like "harassment" or "retaliation" "does not itself constitute 'protected activity within the meaning of Title VII, [if the] complaint lack[s] a racial or gender basis." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam).

Brown complained about Poston's behavior, but repeatedly failed to allege race or national origin discrimination in any formal complaint. Def.'s App. 46-48, 108-09. For example, Brown's IEEO complaint alleges Poston was subjecting him to harassment, retaliation, and even "personal discrimination," but Brown failed to allege Poston—or anyone else at FedEx—discriminated against him based on his race or national origin. *Id.* 33-34, 100-07. This complaint, therefore, was not a protected activity. *Jackson v. Dall. Cty. Juvenile Prob. Dep't*, 2007 WL 2187250, at \*10 (N.D. Tex. July 30, 2007) (finding that memos that alluded to harassment that did not contain details regarding any factor to which Title VII is applicable were not protected activities). Brown's 2013 GFT complaint also does not satisfy his burden, as Brown similarly failed to raise allegations of race or national origin discrimination in that complaint. Def.'s App. 280-86.

The Court next addresses Brown's allegations that Poston called him a "black Mexican" and forbade Brown from speaking Spanish. Similar to how Brown failed to complain of race or national origin discrimination, these specific

14

allegations never appeared in any formal complaint Brown made about Poston. *Id.* 99-106, 280-86. But even assuming Brown reported this behavior, "not every insult, slight, or unpleasantness gives rise to a valid Title VII claim." *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998). To the extent Brown may have believed being called a "black Mexican" was an actionable unlawful employment practice, this belief was not reasonable. *See Turner*, 476 F.3d at 348 (5th Cir. 2007) (holding that employee had not established a prima facie case of retaliation because the employee could not have reasonably believed that isolated comments—where her supervisor referred to inner-city children as "ghetto children"—constituted an unlawful employment practice); *see also Satterwhite v. City of Hous.*, 602 F. App'x 585, 589 (5th Cir. 2015) (per curiam) (holding that employee could not have reasonably believed manager's use of the phrase "Heil Hitler" was actionable under Title VII, and therefore, it could not give rise to protected activity). Brown has not satisfied his burden of demonstrating that he complained of racial or national origin discrimination or any unlawful employment practice sufficient to satisfy the opposition clause.

### Causal Link

Brown also cannot show a causal connection between his complaints and FedEx's decision to forgo offering Brown an interview for the ramp manager position. "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the

15

employee's protected activity.'" *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). "In order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing cases). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

Brown cannot demonstrate any relevant decision maker knew of Brown's complaints regarding discrimination, retaliation, or unfair treatment. The decision maker for the ramp manager position at issue, Phebia Williams, testified that she was the only person involved in scoring application packets for the ramp manager position, with no outside influence. Def.'s App. 195, 198-99. Moreover, none of Brown's evidence demonstrates Williams had any knowledge that Brown had complained about his treatment at FedEx. For example, Brown includes his cover letter to his ramp manager application, but the letter does not notify Williams of his complaints about Poston or FedEx. Pl.'s Resp. 48, Ex. 2 (ECF No. 79). Next, Brown's IEEO complaint identifies Williams as a witness to alleged retaliation and harassment. *Id.* 120, 123. But just because Brown listed Williams as a witness does not mean the Court must impute knowledge of the IEEO

16

complaint to her. There is no evidence Williams received a copy of the IEEO complaint. In addition, Brown's October 3, 2012 email detailing some of Poston's alleged harassment does not reflect that he sent the email to Williams or copied her on the email. Pl.'s Resp. 127. Simply stated, Brown has not provided any evidence demonstrating Williams knew of his prior complaints.

Without supporting evidence, Brown's allegations regarding Williams amount only to suspicion and conjecture. Brown alleges that FedEx's argument is based "upon depositions of Fedex [sic] employees who did not favor Brown, and who held personal grudges against Brown, who changed their stories in their depositions to make it seem as if they barely knew who Brown was . . . ." Pl.'s Resp. 11. But Brown has not presented actual evidence of any personal grudge Williams held against Brown. Even if Williams held a grudge against Brown, this would also fail to prove Williams knew of Brown's complaints. Brown also alleges Williams knew him for 15 years and "knew for certain that he possessed all the qualifications needed for the posted job . . . ." Pl.'s Resp. 36-37. Assuming *arguendo* that Williams knew Brown for 15 years and that she believed Brown possessed all the relevant qualifications for the ramp manger position, this also fails to establish Williams knew he engaged in a protected activity. And despite Brown's allegations to the contrary in his response, Brown admitted he does not know why Williams decided not to grant him an interview. Pl.'s Resp. 169. At best, Browns presents only conclusory assertions that Williams knew about Brown's complaints. Unsupported, conclusory assertions opposing the motion for

17

summary judgment are insufficient to defeat the motion. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

FedEx anticipated that Brown would argue a "cat's paw" theory of causation. *See generally Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). He did not. The one-sentence allegation in Brown's second amended complaint that Poston exerted his influence to deny Brown certain job transfers unrelated to the ramp manager position is not a sufficient invocation of a cat's paw causation theory requiring the Court to address it at this summary judgment stage. Pl.'s 2d Am. Compl. 4, ¶ 28; *see also Anderson*, 477 U.S. at 248-49 (holding that a non-movant may not rely on mere allegations in the pleadings; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial). As with his discrimination claim, Brown cannot establish a prima facie case of retaliation.

<u>Legitimate Non-Discriminatory Reason</u>

Even if Brown could establish a prima facie case of discrimination or retaliation, FedEx proffers evidence showing that it had a legitimate non-discriminatory reason for not selecting Brown for the ramp manager position. "If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions." *King v. Life Sch.*, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). FedEx need only articulate a lawful reason, regardless of its

persuasiveness or credibility. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

FedEx offers uncontroverted evidence showing that Brown's failure to earn an interview was based off FedEx's company candidate-selection policies, which are intended to remove discretion from the hiring calculus as much as possible and ensure hiring managers are unaware of candidates' protected characteristics and behavior. Def.'s App. 185-88, 192, 197-99. Specifically, FedEx offers evidence demonstrating that FedEx selects applicants for an interview based only off information provided in their application packets. *Id.* 192. FedEx further explains that Brown did not have any experience working in many of the positions listed on the position-specific knowledge rating sheet. Def.'s App. 241. In addition, Brown did not have experience working with certain computer systems used by FedEx managers and customer service agents, so his grid score did not increase as a result. *Id.* In sum, Brown's overall grid score was tied for lowest among all candidates, so he was not granted an interview because his score was not among the top three candidates. *Id.* 243. FedEx has met its summary judgment burden to articulate a legitimate, non-discriminatory reason for its actions. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (limited technical knowledge is a legitimate, non-discriminatory reason for termination). The burden now shifts to Brown to raise a genuine issue of material fact by showing either that the proffered reasons are a pretext or that an unlawful reason was a motivating factor in its decision.

### Pretext

Brown has not asserted a mixed motive theory and instead only argues FedEx's proffered reason was pretext. *See* Pl.'s Resp. 20, 23, 25, 29, 30, 34, 36 (citing case law on pretext only and including section on pretext). "Under the pretext alternative, Brown must introduce 'some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination [or retaliation] was the actual reason.'" *See King*, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). To carry this burden, Brown must "rebut each nondiscriminatory or nonretaliatory reason articulated by [FedEx]." *McCoy*, 492 F.3d 551, 557 (5th Cir. 2007). In addition, in cases involving discriminatory promotion, the Fifth Circuit has held that a plaintiff can show pretext by demonstrating that he was "clearly better qualified." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002).

Brown has failed to rebut FedEx's explanation that its decision not to interview Brown was based only on his grid score. Brown asserts that he was qualified for the ramp manager position despite his low grid score, which he alleges was the result of a point-shaving scheme to prevent him from interviewing. However, Brown has failed to offer any evidence of a point-shaving scheme—let alone a discriminatory or retaliatory point-shaving scheme.

Brown also argues he had additional qualifications that FedEx ignored that would have increased his grid score. Pl.'s Resp. 24. Specifically, Brown argues

that he has experience at FedEx in various positions listed in the position-specific knowledge rating sheet. *Id.* In response, FedEx asserts that Brown's experience working in these positions was omitted from his application. Def.'s Reply. 3, *see* Pl.'s Resp. 47-71. Despite Brown's assertions, Brown's application does not reflect management experience, his knowledge of the duties of a ramp manager, or experience as a customer service agent. Pl.'s Resp. 47-71. FedEx has demonstrated that hiring managers at FedEx are permitted only to use information contained in the application packet itself. Def.'s App. 190. As a result, Brown cannot demonstrate that FedEx discriminated against Brown by intentionally neglecting his qualifications with purposes of manufacturing a lower grid score.

In addition, Brown has not shown how, even if FedEx considered any additional qualifications, that he would have been a top-three applicant deserving an interview. Even a plaintiff's "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified." *Price*, 283 F.3d at 723. Even if Brown established a prima facie case of discrimination or retaliation, he has failed to identify any evidence demonstrating mixed motive or pretext. Therefore, FedEx is entitled to summary judgment on Brown's discrimination and retaliation claims.

## Recommendation

For the reasons stated, Plaintiff Omar Brown's Motion to Strike (ECF No. 85) is DENIED, and Defendant Federal Express Corporation's Motion for Summary Judgment (ECF No. 33) should be GRANTED.

**SO RECOMMENDED**.

February 15, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).